UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROCHE DIAGNOSTICS CORP, and ROCHE DIABETES CARE, INC<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTOPHER F. SHAYA<br><br>Defendant.<br>_____/ | Case No. 19-cv-10264<br><br>Paul D. Borman<br>United States District Judge<br><br>Elizabeth A. Stafford<br>United States Magistrate Judge |

## OPINION AND ORDER DENYING DEFENDANT CHRISTOPHER F. SHAYA'S MOTION TO STRIKE PLAINTIFFS' DAMAGES EXPERT DR. GREGORY K. BELL (ECF No. 78.)

### I.   Background

Defendant Christopher Shaya filed a Motion to Strike Plaintiffs' Damages Expert Dr. Gregory K. Bell on February 19, 2021. (ECF No. 78.) Plaintiffs filed a Response on March 5, 2021. (ECF No. 87.) For the reasons that follow, the Defendant's motion will be denied.

### II.   Standard of Review

Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

1

> scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* (quoting Fed. R. Evid. 702). The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). Third, the testimony must be reliable. *Id; See Pennsylvania Lumbermens Mut. Ins. Co. v. Precision Lawn Irrigation Inc.*, No. 18-13261, 2020 WL 8673131, at *11 (E.D. Mich. Nov. 25, 2020).

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation" *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30. "Great liberality is allowed the expert in determining the basis of his opinions under Rule 703. Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 853 (6th Cir. 1981).

### III. Analysis

Defendant Christopher Shaya makes two major arguments in support of his motion to strike the Plaintiffs' damages expert Dr. Gregory Bell. First, Defendant argues that Mr. Bell failed to allocate damages between the "two distinct plaintiffs" – Roche Diagnostic ("RDC") and Roche Diabetes Care Inc. ("RDCI"). Defendant's second and main argument is that Bell's opinions are based on unsupported assumptions that are not based on facts, data, or valid reasoning. Defendant does not challenge Mr. Bell's qualifications as an expert, nor does he specifically challenge the methodology used to calculate damages.

#### a. Allocation of Damages Between Plaintiffs

Defendant argues that Dr. Gregory Bell's expert report should be stricken because the report fails to allocate damages between the two Plaintiffs—RDC and RDCI. Defendant cites no relevant cases in support of his argument.

The record evidence shows that RDCI is the successor in interest to RDC. On November 2, 2015, RDC and RDCI entered into a Capital Contribution Agreement wherein RDC contributed its domestic diabetes care business to RDCI, including "all claims of RDC against third parties to the extent relating to RDC's operation of

the Diabetes Care Business, whether . . . known or unknown." (Capital Contribution Agreement, ECF No 87-7, PageID.2524.) The allocation of damages between the two Plaintiffs may be relevant should damages be awarded in this case. However, the Defendant's challenge has no bearing on the admissibility of Dr. Bell's expert damages report. Defendant's motion to strike Dr. Bell's expert testimony on these grounds is DENIED.

### b. Factual Support for Dr. Bell's Assumptions

Defendant challenges the factual bases for Dr. Bell's damages report and argues that Dr. Bell's assumptions are not based on record evidence and amount to "rampant speculation." Specifically, Defendant first argues that Dr. Bell should not have assumed that all of the 1.5 million strips sold to Northwood and then to Shaya's entities were indeed eventually sold to retail pharmacies. Defendant then argues that Dr. Bell assumes, without evidence, that each sale of any of the 1.5 million allegedly diverted boxes caused the loss of a sale of a similar retail box by Roche at the higher retail price, and made calculations based on the rebates that would have been paid on the sale of those retail strips. Because each of these assumptions are sufficiently supported by record evidence and rest on an adequately reliable basis, Defendant's motion to strike Dr. Bell's expert testimony on these grounds will be denied.

Although "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert," *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997), a court must be sure not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702 Advisory Committee Note, 2000 Amend. Instead, the requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation— i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. 579, 590 (1993). "[M]ere weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000)

Roche successfully traced nearly 500,000 of the 1.5 million diverted NFR strips to the retail channel and made undercover purchases of diverted test strips at retail pharmacies. Dr. Bell relied on this information when forming his opinion. (Affidavit of Dr. Gregory K. Bell, ¶ 29, ECF No. 87-3, PageID.2303.) The fact that Plaintiffs have not traced each of the 1.5 million boxes of test strips does not undermine the admissibility Dr. Bell's opinion. The alleged scheme in this case involved Roche test strips bring sold in several transactions through several entities before reaching the retail channel. Given the apparent lengths that the Plaintiffs went to trace the diverted strips (*See* Response, ECF No. 87 PageID.2136-37), it would

5

be "patently unfair" to allow the Defendant, who is alleged to have fraudulently diverted the test strips to purchasers not disclosed to the Plaintiffs, to now argue that an expert's attempt to piece together evidence is too speculative. *Jahn v. Equine Servs., PSC,* 233 F.3d 382, 390 (6th Cir. 2000).

Further, Dr. Bell found it "unsurprising" that he had "seen no information" suggesting that any of the diverted NFR strips, which Roche sold to Northwood at a lower price than retail strips, were actually sold outside of retail channels. (Expert Report of Dr. Gregory K. Bell ¶ 29, ECF No. 87-3.) This is because, as Dr. Bell notes, "[i]t would not make economic sense for any of the diverted DME Strips to be sold to beneficiaries of DME Plans," given the price of those strips after passing through several entities. (*Id.*)

Defendant next challenges Dr. Bell's assumption that each sale of low price strips to Northwood replaced what would otherwise have been a sale of Roche retail strips, which would include a rebate payment on those retail strips.

According to Dr. Bell, "[t]he analysis assumes that the consumers did what they did, which was purchase a Roche test strip." (Deposition of Dr. Gregory K. Bell, 65:19-20, ECF No. 87-6.) The allegedly diverted strips were successively marked up as they were re-sold through distributors, at prices significantly higher than the price of the NFR strips initially sold by Roche to Northwood. (Dr. Bell Expert Report, ¶ 29, ECF No. 87-3 PageID.2303-04.) Ultimately, these strips were

6

adjudicated as retail strips. (Deposition of Anne McMurtry, Director of Pharmacy Operations at Alliance Holdings, LLC, 15:16-16:13, ECF No. 87-5.) Dr. Bell accordingly assumed the strips were diverted to the retail market, and replaced the sale of what was indeed purchased, a Roche test strip that was adjudicated as if it was a retail strip. (Dr. Bell Expert Report at ¶ 19, 34.) These assumptions do not amount to unfounded speculation, but instead find sufficient basis in record evidence.

      Defendant offers several possible alternative scenarios wherein Roche retail strips would not have been sold but for the availability of the diverted strips. (Mot. to Strike, ECF No. 78. PageID.1643.) For example, Defendant suggests that pharmacies may have elected not to sell strips if they could not purchase diverted strips, or that if the diverted test strips were unavailable, the pharmacies may have sought out strips from another manufacturer. (*Id.*) Contrary to Defendant's arguments, "[t]he fact that several possible causes might remain 'uneliminated' ... only goes to the accuracy of the conclusion, not to the soundness of the methodology." *Jahn*, 233 F.3d 382, 390 (6th Cir. 2000) (citation omitted). Defendant does not offer a compelling reason why its own scenarios, which find no support in the record, should be accepted over Dr. Bell's assumptions, which find ample support in the record.

7

Defendant also argues that that there are other "equally plausible scenarios" that could lessen the amount of rebates actually submitted. (Mot. to Strike, ECF No. 78 PageID.1643.) Defendant suggests, for example, that Dr. Bell failed to account for the possibility that some of the untraced strips remain in inventory, or that the rebates paid on the strips that passed through Northwood/Olympus were less than those normally paid on retail strips.

Plaintiffs respond that "[i]t is absurd to suggest that pharmacies willing to purchase diverted test strips on the gray market to make money then chose to refrain from submitting rebate requests, thus *losing* large sums of money." (ECF No. 87 PageID.2140) (emphasis in original.) Further, there is evidence from one purchaser of the diverted strips, Alliance Medical Holdings, LLC, that rebates were sought by retail pharmacies regardless of whether the strips were retail strips or diverted DME strips. Anne McMurtry, Director of Pharmacy Operations at Alliance, stated in her deposition that "[a]ny adjudication that went through was for the retail [code] regardless of the box received in or dispensed out," and it was her understanding that for every "retail sale box that Alliance dispensed, it adjudicated it as though it were a retail box" (Deposition of Anne McMurtry, 15:16-16:13, ECF No. 87-5.)

This challenge to the factual basis of Dr. Bell's testimony concerns the weight, rather than the admissibility of that testimony. "[M]ere weaknesses in the factual basis of an expert witness' opinion ... bear on the weight of the evidence rather than

8

on its admissibility." *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000). Further, the district court's role at this stage is a gatekeeping one, and a court must be sure not "to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702 Advisory Committee Note, 2000 Amend..

*Daubert* emphasizes that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," and that "[t]hese conventional devices, rather than wholesale exclusion ..., are the appropriate safeguards where the basis of [expert] testimony meets the standards of Rule 702." *Daubert,* 509 U.S. at 596. "Whether an opinion should be accepted is not for the trial judge. That is for the finder of fact." *Mannino*, 650 F.2d at 853.

Accordingly, this Court declines to strike Dr. Bell's expert report on the grounds that the opinion is not based on facts or data. Defendant Christopher Shaya's Motion to Strike Plaintiffs' Damages Expert Dr. Gregory K. Bell (ECF No. 78) is DENIED.

SO ORDERED.

Dated: July 28, 2021                               s/Paul D. Borman
                                                   Paul D. Borman
                                                   United States District Judge

9