UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHE DIAGNOSTICS CORP. and
ROCHE DIABETES CARE, INC.,

               Plaintiffs,

v.

CHRISTOPHER F. SHAYA,

               Defendant.

_____/

Case No. 19-10264

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANT CHRISTOPHER SHAYA'S MOTIONS IN LIMINE (ECF NOS. 140, 141, 143, 144)

This case involves an alleged scheme by Defendant Christopher Shaya to use his companies, Olympus Global, LLC (Olympus) and Delta Global, LLC (Delta), to purchase not-for-retail-sale (NFR) diabetes test strips manufactured by Plaintiffs Roche Diagnostics Corp. and Roche Diabetes Care, Inc. (together, Roche) from Northwood, Inc. (Northwood) and then resell them in retail markets at a significant markup. (*See generally*, ECF No. 1, Complaint.)

Now before the Court are four motions in limine filed by Defendant Shaya, seeking to exclude certain of Plaintiffs' proposed exhibits to be used during the liability phase of the bifurcated trial (ECF Nos. 140, 141, 143, 144.) The motions have been fully briefed. The Court does not believe that oral argument will aid in its

disposition of these motions; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons discussed below, the Court denies, without prejudice, Defendant Christopher Shaya's Motions in Limine at ECF Nos. 140, 141, 143, and 144.

## I. BACKGROUND

In the parties' Second Revised Joint Proposed Final Pretrial Order, the parties stipulated to the following facts:

1.    Binson's Hospital Supplies, Inc. ("Binson's") is — and was at all relevant times — a Michigan-based mail-order provider of medical equipment, including blood glucose test strips, and owner of several brick-and-mortar stores in Michigan and Florida where it is possible to purchase medical equipment in person. Northwood, Inc. ("Northwood") is — and was at all relevant times — a Michigan-based subsidiary of Binson's and a mail-order provider of medical equipment, including blood glucose test strips.

2.    On February 10, 2011, Roche Diagnostics Corporation entered into a product and pricing agreement with Binson's (the "Binson's agreement"), which contracted on behalf of itself and its subsidiary, Northwood. The Binson's agreement permitted Binson's and Northwood to sell NFR test strips purchased from Roche only to (i) patients covered by DME insurance or (ii) to DME providers approved by Roche.

3.    In November, 2015, Roche Diagnostics Corp. transferred its diabetes care business to Roche Diabetes Care, Inc.

4.     The Binson's agreement was amended on several occasions, but the provision requiring that test strips be sold only to DME patients or approved DME providers remained in place at all times.

5.     From 2011 to July 2014, Binson's and Northwood purchased approximately 5,000-10,000 boxes per month of test strips from Roche. During this time, Binson's and Northwood submitted reports to Roche showing that their sales were to DME beneficiaries.

6.     On May 2, 2014, Northwood entered into a Distributor Agreement with Olympus Global, LLC ("Olympus"). The Distributor Agreement did not require Olympus to sell the NFR test strips to DME patients.

7.     Olympus was jointly owned by Mr. Shaya and Jeremiah Mankopf. Delta Global, LLC ("Delta") was wholly-owned by Mr. Shaya.

8.     At the request of Northwood, Mr. Shaya sent lists of health insurance plans to Binson's and Northwood.

9.     Northwood representatives sent lists of health insurance plans to Roche.

10.     Binson's and Northwood represented to Roche that they had located a trove of new DME patients and that the NFR test strips purchased under the Binson's agreement would be sold to these patients.

11.     Based on representations that the test strips would be sold to DME patients, Roche amended the Binson's agreement on July 21, 2014 to allow Binson's/Northwood to operate without submitting sales tracings that would confirm that the Roche test strips Binson's/Northwood purchased were being dispensed to DME patients.

12.     From July 2014 to September 2015, Northwood sold all of the NFR test strips it purchased from Roche under the Binson's agreement to Olympus and Delta. Neither Olympus nor Delta was an approved DME provider under the Binson's agreement.

3

13.     Under its agreement with Roche, as amended, Binson's and Northwood were not allowed to sell NFR test strips to Olympus or Delta.

14.     The NFR test strips that were sold by Northwood to Olympus and Delta were re-sold to Medical Supply Solutions, Inc. ("MSSI") and Republic Pharmaceuticals ("Republic").

15.     Between July 21, 2014 and September 24, 2015 (when Roche ceased selling test strips to Binson's and Northwood), Northwood sold approximately 1,526,688 50-strip boxes of NFR test strips to Olympus and Delta, which re-sold those test strips to MSSI and Republic.

16.     Roche had no direct communications with Mr. Shaya regarding test strips sold to Binson's and Northwood, and Roche did not pay any money directly to Mr. Shaya, Olympus or Delta.

17.     Roche never sold any test strips directly to Christopher Shaya, Olympus or Delta.

18.     Roche brought claims against Binson's, Northwood, Christopher Shaya and Northwood/Binson's representatives, in Indiana federal court in 2017 (*Roche Diagnostics Corp., et al. v. Binson's Hospital Supplies, Inc., et al.*, Civil Action No. 1:17-cv-0949-TWP-DML (S.D. Ind.)). That case settled in March 2019, with the defendants other than Christopher Shaya agreeing to pay Roche $13 million over a four-year period. Roche subsequently filed this lawsuit against Mr. Shaya and the individual Binson's and Northwood executives, but voluntarily dismissed claims against all individual defendants other than Mr. Shaya, after the Binson's and Northwood executives agreed to participate in the Indiana settlement and pay Roche $13 million.

(Parties' Second Revised Joint Proposed Final Pretrial Order (2nd Revised JFPTO),

at pp. 7-10.)

Roche alleges that Shaya, through several shell companies, engaged in a

scheme to fraudulently divert 1.5 million boxes of NFR blood glucose test strips to

4

retail pharmacies. Roche asserts claims against Shaya in this case for fraud and fraud in the inducement, including aiding and abetting fraud and conspiracy (Counts I and II), unjust enrichment (Count IV), and tortious interference with contract (Count V). (ECF No. 1, Compl.)[1] Roche claims to have lost $84 million in profits and millions more in unwarranted rebates on NFR test strips sold in retail markets as a result of Shaya's alleged scheme. (*Id.* ¶¶ 127-28.) Roche also alleges that Shaya made $8 million in personal profits. (*Id.* ¶ 90.) Roche claims it suffered damages because each sale of test strips to Northwood and then Olympus/Delta "replaced a sale of retail strips that would have been made but for Defendants' fraud" and because Roche "paid millions of dollars of warranted rebates to insurance companies and [pharmacy benefit managers] in connection with these [insurance] claims" (*Id.* ¶¶ 124-25.)

On July 28, 2021, this Court entered an Opinion and Order denying Defendant Shaya's motion for summary judgment (ECF No. 96), and the Court also denied Defendant Shaya's motion for reconsideration of that Opinion and Order. (ECF No. 99.) The Court concluded that Plaintiff Roche Diabetes Care, Inc., as the successor-in-interest to Roche Diagnostics Corporation, is a proper plaintiff in this case, and that genuine issues of material fact remain as to Roche's claims for fraud (including

---

[1] Count III, a claim for negligent misrepresentation, was asserted against the now-dismissed Binson's Defendants only. (ECF No. 1, Compl., PageID.44-45.)

5

fraud, aiding and abetting fraud, and conspiracy to commit fraud), unjust enrichment, and tortious interference with contract. (ECF No. 96.)

On March 1, 2022, this Court entered an Order bifurcating the liability and damages phases of the trial, with the issue of liability on Roche's claims tried first, potentially followed by a second phase to determine damages, if necessary. (ECF No. 119.) On April 1, 2022, this Court entered an Order directing the parties to submit a revised proposed Joint Final Pretrial Order, and to identify in that order which exhibits will be used in the liability phase of the trial and which exhibits will be used in the damages phase. (ECF No. 120.)

In accordance with those Orders, the parties submitted their Second Revised Joint Proposed Final Pretrial Order on September 28, 2022, and designated whether their proposed exhibits would be used in the liability phase or damages phase of the trial (or in some cases, in both phases).

Defendant Shaya now objects to 13 of Roche's proposed trial exhibits. Four of those proposed exhibits are designated to be used during the liability phase, or the liability and damages phases, of the trial, and nine of those exhibits are designated to be used during the damages phase of the trial only.

The Court now addresses the four motions in limine to exclude proposed exhibits to be used in the liability phase of the bifurcated trial and defers ruling on

6

the nine motions in limine to exclude exhibits to be used during the damages phase of the trial only.

## II. LEGAL STANDARD

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to

consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions in limine may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992), *overruled on other grounds by Weisgram v. Marley co.*, 528 U.S. 440 (2000)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

### III.  ANALYSIS

#### A. Shaya's Motions in Limine to Exclude Roche's Proposed Exhibit Nos. 187 and 188 (ECF Nos. 140 and 141)

Roche's proposed Exhibit No. 187 is a "Medical Benefit Agreement between Roche Diagnostics Corporation and J and B Medical." (2nd Revised JFPTO at p. 28.) It is a 28-page contract between Roche and J and B Medical Supply, dated December 12, 2008, and signed by D. Peter Manlago on behalf of Roche Diagnostics Corporation and by Julian Shaya. (ECF No. 141-1.)

Roche's proposed Exhibit No. 188 is an "[a]udit of Roche Diagnostic Corporation's DME Company Supply Company, Inc. Medical Benefit Agreement with J and B Medical Supply, Co. (Draft version)." (*Id.*) It is a six-page document

dated December 4, 2009, and "Chris Shaya" is listed as one of the "Auditee Contact(s)." (ECF No. 140-1.) Roche seeks to introduce these two Exhibits during the liability phase of the bifurcated trial.

Shaya argues in his motions in limine that proposed Exhibit Nos. 187 and 188 should be excluded from evidence at trial for four reasons – (1) they are hearsay pursuant to Fed. R. Evid. 801, and not subject to the business records exception, Fed. R. Evid. 803(6); (2) there is no witness to authenticate the Exhibits pursuant to Fed. R. Evid. 901; (3) the Exhibits are irrelevant under Fed. R. Evid. 401 and 402; and (4) they are unduly prejudicial and would confuse the jury under Fed. R Evid. 403.

The burden of showing admissibility of evidence is on its proponent, here Roche. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liability Litig.*, 512 F. Supp. 3d 803, 812 (S.D. Ohio 2021) (citing *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005)).

### 1. Authentication

Shaya argues that Exhibit Nos. 187 and 188 should be excluded because Roche has failed to identify a witness who can authenticate the documents pursuant to Fed. R. Evid. 901.

In its Response brief, Roche argues that questions of authentication of the Exhibits should be deferred at this time because "[i]ssues of authentication and

foundation are issues which are better examined during trial as evidence is presented in the context of the parties' arguments and testimony." *See Hinkle v. Ford Motor Co.*, No. 3:11-24-DCR, 2012 WL 5868899, at *4 (E.D. Ky. Nov. 20, 2012) (citing *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004 (noting that unless evidence is clearly inadmissible on all potential grounds, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context")). Roche asserts that it should be permitted to show Exhibit Nos. 187 and 188 to Shaya at trial to establish their foundation.

The Court agrees and defers ruling on this authentication issue at this time. *See Hinkle*, 2012 WL 5868899, at *4; *see also Hilborn v. Chaw Khong Tech., Co.*, No. 03-cv-71726, 2008 WL 4225783 at *2 (E.D. Mich. Sept. 10, 2008) (Majzoub, M.J.) (finding motions in limine with respect to proposed trial exhibits on the basis of authentication premature). Before Roche will be able to present these Exhibits at trial, it must overcome any authentication and foundation issues in accordance with Fed. R. Evid. 901. Should Roche fail to lay the proper groundwork for the admission of Exhibit Nos. 187 and/or 188 at trial, Shaya may renew his authentication objections at that time, if appropriate.

11

### 2. Hearsay

Federal Rule of Evidence 801 defines "hearsay" as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Under Federal Rule of Evidence 803(6), records of a regularly conducted business or organizational activity are not excluded as hearsay if the following conditions are met: (i) the record was created at or near the time by – or from information transmitted by – someone with knowledge; (ii) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (iii) making the record was a regular practice of that activity. These conditions must be shown by the testimony of "the custodian or another qualified witness, or by certification that complies with Rule 902(11) or (12) or with a statute permitting certification...." Fed. R. Evid. 803(6)(D). Records meeting these requirements are generally admissible if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Shaya argues that proposed Exhibit Nos. 187 and 188 should be excluded because they are hearsay documents pursuant to Fed. R. Evid. 801(c), and do not fall

within one of the hearsay exceptions, in particular the business records exception under Rule 803(6). Shaya contends that Roche has listed no "custodian" or "qualified witness" "with knowledge" from J and B who will testify that Exhibit Nos. 187 and 188 were "kept in the course of a regularly conducted business activity," and thus the Exhibits are inadmissible.

In its Response brief, Roche asserts that it is not seeking to introduce Exhibit Nos. 187 and 188 for the truth of the matters asserted therein, but instead wants to use the Exhibits to demonstrate Shaya's knowledge and awareness of J and B's contract and an audit report finding a breach of that contract with Roche. Statements or documents that arguably constitute hearsay "may still be offered when offered 'not for the truth of the matter asserts, … but to show notice.'" *See United States v. Maike*, 613 F. Supp. 3d 991, 998-99 (W.D. Ky. 2020) (admitting exhibits to show notice and knowledge) (citing *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 345 n.6 (6th Cir. 2001)). "Additionally, '[t]he rule does not apply to statements offered merely to show that they were made or had some effect on the hearer.'" *Id.* at 999 (citations omitted).

Thus, based on the representations of Roche in its Response briefs, the Court finds that Roche does not need to demonstrate that proposed Exhibit Nos. 187 and 188 meet the business records exception to the hearsay rule because the Exhibits are

not being offered to prove the truth of the matters asserted and thus are not subject to the hearsay exclusion. *See Maike*, 613 F. Supp. 3d at 999 (citing *Galloway v. Big G Express, Inc.*, No. 3:05-CV-545, 2008 WL 2704443, at *3-4 (E.D. Tenn. July 3, 2008) ("[H]earsay concerns do not serve as a basis of precluding the [emails] to the extent such evidence is offered to establish notice or Defendant's knowledge."); *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) ("Statements offered to prove the listener's knowledge are not hearsay."); *United States v. Smith*, No. 3:14CR-99-JHM, 2016 WL 589890, at *11 (W.D. Ky. Feb. 11, 2016)).

### 3. Relevance

Shaya argues that Exhibit Nos. 187 and 188 are irrelevant because J and B's contractual relationship with Roche, in a contract executed five years before the alleged fraud in this case, and J and B's alleged practices, have no relevance to the fraud and unjust enrichment claims brought by Roche in this case.

Roche argues that the proposed Exhibits are relevant because they will be used to demonstrate background regarding Shaya's awareness and proximity to medical supply companies that were found to have diverted Roche's NFR test strips outside of approved medical benefits purchasers, which is relevant to Shaya's alleged intent to defraud in this case. Although Defendant Shaya is not a signatory to the Contract

14

at Exhibit No. 187, Roche asserts that J and B is a family-owned business and "Chris Shaya" is listed as an "Auditee Contact" on Exhibit No. 188.

Relevant evidence is defined in Federal Rule of Evidence 401 as evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Relevancy is an extremely broad concept. Both the Supreme Court and the Sixth Circuit have noted that the standard set forth in Rule 401 is a liberal one." *Maike*, 613 F. Supp. 3d at 997 (quoting *Hinkle v. Ford Motor Co.*, No. 3:11-24-DCR, 2012 WL 4049477, at *1-2 (E.D. Ky. Sept. 13, 2012) (citing *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006)). In addition, unless evidence is clearly inadmissible on all potential grounds, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context." *Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

The Court finds that, at this time, Roche has sufficiently established that Exhibit Nos. 187 and 188 may be relevant to the claims and defenses in this case, to demonstrate Shaya's knowledge or awareness J and B's relationship to Roche and an audit report finding a breach of that contract. *See Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) ("[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball.").

15

### 4. Unfair prejudice

Finally, Shaya argues that proposed Exhibit Nos. 187 and 188 should be excluded because they are more prejudicial than probative and would likely confuse or mislead the jury. Shaya asserts that his testimony will be that he never had any ownership interest in J and B, and that J and B's violations of multiple parts of its contracts with Roche have nothing to do with the claims against Shaya in this case. Shaya argues that Roche wants to introduce Exhibit Nos. 187 and 188 to attempt to get the jury to make the leap from J and B's breach of its contracts with Roche to Shaya's alleged fraud upon Roche.

Roche argues in its Response briefs that these two Exhibits are relevant to provide background to the jury to evaluate Shaya's intent to defraud. Roche contends that exclusion is not warranted at this time because the Court will be better equipped to assess potential prejudice of these Exhibits during the course of the trial, and that any prejudice could be mitigated by a proper limiting instruction.

Federal Rule of Evidence 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is not excluded merely because it is damaging or prejudicial

to a defendant's case; rather, it must be *unfairly* prejudicial." *Hinkle*, 2012 WL 4049477, at *1 (emphasis in original) (citing *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). Evidence that is prejudicial only in the sense that it portrays the defendant in a negative light is not unfairly prejudicial for purposes of Rule 403. *Id.* (citing *United States v. Chambers,* 441 F.3d 438, 456 (6th Cir. 2006)). Moreover, to warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially outweigh* its probative value. Fed. R. Evid. 403. Rule 403 is not concerned with "the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *Hinkle*, 2012 WL 4049477, at *1 (citing *United States v. Mendez-Ortiz,* 810 F.2d 76, 79 (6th Cir. 1986)).

The Court rejects Shaya's assertion that Exhibit Nos. 187 and 188 fail the Rule 403 balancing test. In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission. *See United States v. Jones*, 554 F. App'x 460, 473 (6th Cir. 2014) (White, J. concurring); *see also United States v. Tinoco,* 304 F.3d 1088, 1120 (11th Cir. 2002) ("Rule 403 is an extraordinary remedy which the district court should invoke sparingly," and "[t]he balance ... should be struck in favor of admissibility"). The Court "must look at the evidence in a light most

17

favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) (citing *United States v. Kelley,* 849 F.2d 999, 1003 (6th Cir. 1988)). Here, proposed Exhibit Nos. 187 and 188 have the potential to provide evidence of Shaya's awareness and proximity to a medical supply company that was found to have diverted Roche's NFR test strips outside of the approved medical benefits purchasers, and they are not "unfairly prejudicial."

Accordingly, based on all of the above, the Court denies Shaya's Motions in Limine to Exclude Roche's proposed Exhibit Nos. 187 and 188 without prejudice. However, "[d]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *See Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

**B. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 245 (ECF No. 143)**

Roche's proposed Exhibit No. 245 are "2014 and 2015 Schedule E (Form 1040) forms, and accompanying Schedule K-1 worksheets, as filed by Shaya listing income from Alpha XE LLC and Olympus Global LLC." (2d Revised JFPTO at p.

18

32.) Roche proposes to use this Exhibit during both the liability and damages phases of the trial.

Shaya argues in his motion in limine that Roche's proposed Exhibit No. 245 should be excluded from evidence because it is– (1) hearsay and not subject to the business records exception; (2) irrelevant; and (3) unduly prejudicial and confusing to the jury.

### 1. Hearsay and authentication

Shaya argues that Exhibit No. 245 – his personal tax return – is "clearly a hearsay document" and that Roche cannot establish that it falls within the business records exception to the hearsay rule because Roche failed to list the accountant who prepared the return as a witness.

Roche argues that Shaya's hearsay objection "falls flat." Roche contends that Exhibit No. 245 is a relevant business record and that it expects to be able to lay the foundation for admission of this Exhibit through Shaya.

The Court finds that Roche may seek to introduce Exhibit No. 245 into evidence at trial. "Upon proper foundation, tax returns may be admissible under exceptions to the hearsay rules including Rule 803(6) (business records) and Rule 803(8) (public records)." *Green v. United States*, No. CIV-13-1237-D, 2016 WL 5876030, at *2 (W.D. Okla. Oct. 7, 2016) (citing, *e.g., In re: Indus. Commercial

*Elec.*, 319 B.R. 35, 54 (D. Mass. 2005); *United States v. Stefani*, 338 F. App'x 579 (9th Cir. 2009)). Further, "if offered against the taxpayer" as in this case, "tax returns and associated records are definitionally not hearsay pursuant to Rule 801(d)(2)." *Id.*; *see also Armstrong v. Curves Int'l, Inc.*, No. 15-294, 2017 WL 5256997, at *4 (W.D. Tex. Nov. 2, 2017) (finding "that tax returns, signed by the taxpayer under penalty of perjury, and filed with the taxing authority under risk of criminal charges if fraudulent, have an inherent indicia of reliability and trustworthiness.").

Further, while questions of authentication of documents are better determined at the time of trial, *Hinkle*, 2012 WL 5868899, at *4, Shaya, as the custodian of the tax returns, should be deemed qualified to authenticate his own tax returns, and the fact that he may not have been the tax preparer does not render the tax returns unreliable or untrustworthy. *See Armstrong*, 2017 WL 5256997, at *4.

### 2. Relevance and undue prejudice

Shaya argues that Roche's proposed Exhibit No. 245 is not relevant to the liability phase of this trial, and that even if relevant, it is more prejudicial than probative because it reflects the amount of income Shaya derived indirectly from the test strips transactions. Shaya contends that because he concedes he derived an economic benefit from engaging in the test strips transactions, there is no justification for entering this Exhibit during the liability phase of the trial. Shaya

20

does not argue that Exhibit No. 245 is irrelevant to the damages phase of the trial, or that its admission would be unfairly prejudicial in that second phase of the trial.

Roche contends that Exhibit No. 245 is relevant to the liability phase of the trial, and not unfairly prejudicial, because it relates to both Shaya's motivation and intent to defraud, as well as his unjust enrichment from receipt of an indirect benefit from Roche from the sales of NFR blood glucose test strips.

The Court finds that Shaya's concession that he derived an economic benefit from engaging in the NFR strip transactions does not render Exhibit No. 245 irrelevant to the liability phase of the trial, because the size of that "economic benefit" (in the millions of dollars) may be relevant to Shaya's motivation and intent for the alleged fraudulent scheme. For this same reason, the Court finds that Exhibit No. 245 is not more prejudicial than probative. "Rule 403 generally favors the *admission* of evidence, and exclusion under the rule is an extraordinary remedy that should be used sparingly." *Green*, 2016 WL 5876030, at *2.

Therefore, for these reasons, the Court denies without prejudice Shaya's Motion in Limine to Exclude Roche's proposed Exhibit No. 245 from the liability phase of the trial, and, if necessary, from the damages phase of the trial.

### C. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 307 (ECF No. 144)

Roche's proposed Exhibit No. 307 is an "[e]mail from chrismd2000@yahoo.com to V. Palamino and R. Edelstein re 'can't legally stop us diverting.'" (2d Revised FJPTO at p. 36.) Roche seeks to introduce this Exhibit during the liability phase of the bifurcated trial.

Shaya argues that Exhibit No. 307 should be excluded because it is irrelevant and because it is more prejudicial than probative and would likely confuse or mislead the jury.

Shaya describes Exhibit No. 307 as a March 28, 2013, email from him to two non-parties "discuss[ing] federal law relating to the sale of trademarked items" and "suggest[ing that] he believes manufacturers can't stop the second purchaser from distributing products in any market channel." (ECF No. 144, Def.'s Mot., PageID.4155.) Shaya states there are no trademark infringement claims at issue in this lawsuit, and thus the email is prejudicial and likely to confuse the jury and lead a jury to render a verdict against him because of his views on trademark infringement.

Roche contends that this Exhibit is relevant to Shaya's intent to defraud Roche because "the implication behind sharing this email is clear: [Shaya] is

22

communicating his conclusion that 'manufacturers cant [sic] legally stop us from diverting' not-for-retail test strips." (ECF No. 159, Pls.' Resp., PageID.4725.)

The Court agrees, at this time, that Exhibit No. 307 appears relevant to the claims at issue in this case that Shaya engaged in a scheme to fraudulently divert 1.5 million boxes of NFR test strips to retail pharmacies. Shaya contends in his Reply brief that this Exhibit only "reflects Shaya's musings" on this topic and "in no way prove[s] that Shaya intended to defraud Plaintiffs." (ECF No. 167, Def.'s Reply, PageID.4766.) However, "[t]he standard for relevance is 'extremely liberal' under the Federal Rules of Evidence," and "a piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch*, 588 F.3d at 400-01 (explaining that "[i]t is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence.") (citation omitted).

The Court finds that Roche's proposed Exhibit No. 307 "advance[s] the ball" in this case because it goes to Shaya's alleged intent to engage in the kind of scheme at issue in this case – utilizing distributors to divert Roche's NFR test strips to the retail channels. That this Exhibit might cast Shaya in a negative light does not make that Exhibit unfairly prejudicial. *See Maike*, 613 F. Supp. 3d at 997 (citing *Hinkle*, 2012 WL 4049477, at *1). The Court finds at this time that any prejudice does not

23

substantially outweigh the Exhibit's probative value and that that this Exhibit is not unduly prejudicial and does not create unnecessary confusion, and thus does not require exclusion under Rule 403.

Accordingly, Shaya's Motion in Limine to Exclude Roche's proposed Exhibit No. 307 during the liability phase of the trial is denied without prejudice.

## IV.   CONCLUSION

Accordingly, for all the reasons set forth above, Defendant Shaya's motions in limine to exclude Roche's proposed Exhibit Nos. 187, 188, 245 and 307 (ECF Nos. 140, 141, 143, 144) are DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 27, 2023                         s/Paul D. Borman
                                             Paul D. Borman
                                             United States District Judge