UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHE DIAGNOSTICS CORP. and
ROCHE DIABETES CARE, INC.,

                Plaintiffs,

v.

CHRISTOPHER F. SHAYA,

                Defendant,

_____/

Case No. 19-10264

Paul D. Borman
United States District Judge

## OPINION AND ORDER DENYING WITHOUT PREJUDICE DEFENDANT CHRISTOPHER SHAYA'S MOTIONS IN LIMINE TO EXCLUDE PLAINITFFS' PROPOSED EXHIBITS AT TRIAL (ECF NOS. 132-139, 142)

This case involves an alleged scheme by Defendant Christopher Shaya to use his companies, Olympus Global, LLC (Olympus) and Delta Global, LLC (Delta), to purchase not-for-retail-sale (NFR) diabetes test strips manufactured by Plaintiffs Roche Diagnostics Corp. and Roche Diabetes Care, Inc. (together, Roche) from Northwood, Inc. (Northwood) and resell them in retail markets at a significant markup. (*See generally*, ECF No. 1, Complaint.)

Now before the Court are nine motions in limine filed by Defendant Shaya, seeking to exclude certain of Plaintiffs' proposed exhibits to be used during the damages phase of the bifurcated trial. (ECF Nos. 132-139, 142.) The motions have

been fully briefed. The Court does not believe that oral argument will aid in its disposition of these motions; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons discussed below, the Court denies, without prejudice, Defendant Christopher Shaya's Motions in Limine at ECF Nos. 132-139 and 142.

## I. BACKGROUND

In the parties' [Third Revised] Joint Proposed Final Pretrial Order, the parties stipulated to the following facts:

1. Binson's Hospital Supplies, Inc. ("Binson's") is — and was at all relevant times — a Michigan-based mail-order provider of medical equipment, including blood glucose test strips, and owner of several brick-and-mortar stores in Michigan and Florida where it is possible to purchase medical equipment in person. Northwood, Inc. ("Northwood") is — and was at all relevant times — a Michigan-based subsidiary of Binson's and a mail-order provider of medical equipment, including blood glucose test strips.

2. On February 10, 2011, Roche Diagnostics Corporation entered into a product and pricing agreement with Binson's (the "Binson's agreement"), which contracted on behalf of itself and its subsidiary, Northwood. The Binson's agreement permitted Binson's and Northwood to sell NFR test strips purchased from Roche only to (i) patients covered by DME insurance or (ii) to DME providers approved by Roche.

3. In November, 2015, Roche Diagnostics Corp. transferred its diabetes care business to Roche Diabetes Care, Inc.

4.     The Binson's agreement was amended on several occasions, but the provision requiring that test strips be sold only to DME patients or approved DME providers remained in place at all times.

5.     From 2011 to July 2014, Binson's and Northwood purchased approximately 5,000-10,000 boxes per month of test strips from Roche. During this time, Binson's and Northwood submitted reports to Roche showing that their sales were to DME beneficiaries.

6.     On May 2, 2014, Northwood entered into a Distributor Agreement with Olympus Global, LLC ("Olympus"). The Distributor Agreement did not require Olympus to sell the NFR test strips to DME patients.

7.     Olympus was jointly owned by Mr. Shaya and Jeremiah Mankopf. Delta Global, LLC ("Delta") was wholly-owned by Mr. Shaya.

8.     At the request of Northwood, Mr. Shaya sent lists of health insurance plans to Binson's and Northwood.

9.     Northwood representatives sent lists of health insurance plans to Roche.

10.     Binson's and Northwood represented to Roche that they had located a trove of new DME patients and that the NFR test strips purchased under the Binson's agreement would be sold to these patients.

11.     Based on representations that the test strips would be sold to DME patients, Roche amended the Binson's agreement on July 21, 2014 to allow Binson's/Northwood to operate without submitting sales tracings that would confirm that the Roche test strips Binson's/Northwood purchased were being dispensed to DME patients.

12.     From July 2014 to September 2015, Northwood sold all of the NFR test strips it purchased from Roche under the Binson's agreement to Olympus and Delta. Neither Olympus nor Delta was an approved DME provider under the Binson's agreement.

3

13.    Under its agreement with Roche, as amended, Binson's and Northwood were not allowed to sell NFR test strips to Olympus or Delta.

14.    The NFR test strips that were sold by Northwood to Olympus and Delta were re-sold to Medical Supply Solutions, Inc. ("MSSI") and Republic Pharmaceuticals ("Republic").

15.    Between July 21, 2014 and September 24, 2015 (when Roche ceased selling test strips to Binson's and Northwood), Northwood sold approximately 1,526,688 50-strip boxes of NFR test strips to Olympus and Delta, which re-sold those test strips to MSSI and Republic.

16.    Roche had no direct communications with Mr. Shaya regarding test strips sold to Binson's and Northwood, and Roche did not pay any money directly to Mr. Shaya, Olympus or Delta.

17.    Roche never sold any test strips directly to Christopher Shaya, Olympus or Delta.

18.    Roche brought claims against Binson's, Northwood, Christopher Shaya and Northwood/Binson's representatives, in Indiana federal court in 2017 (*Roche Diagnostics Corp., et al.  v. Binson's Hospital Supplies, Inc., et al.*, Civil Action No. 1:17-cv-0949-TWP-DML (S.D. Ind.)). That case settled in March 2019, with the defendants other than Christopher Shaya agreeing to pay Roche $13 million over a four-year period. Roche subsequently filed this lawsuit against Mr. Shaya and the individual Binson's and Northwood executives, but voluntarily dismissed claims against all individual defendants other than Mr. Shaya, after the Binson's and Northwood executives agreed to participate in the Indiana settlement and pay Roche $13 million.

(Parties' [Third Revised] Joint Proposed Final Pretrial Order (3d Revised JFPTO),

at pp. 7-10.)

Roche alleges that Shaya, through several shell companies, engaged in a

scheme to fraudulently divert 1.5 million boxes of Roche's NFR blood glucose test

4

strips to retail pharmacies. Roche asserts claims against Shaya in this case for fraud and fraud in the inducement, including aiding and abetting fraud and conspiracy (Counts I and II), unjust enrichment (Count IV), and tortious interference with contract (Count V). (ECF No. 1, Compl.)[1] Roche claims to have lost $84 million in profits and millions more in unwarranted rebates on NFR strips sold in retail markets as a result of Shaya's alleged scheme. (*Id.* ¶¶ 127-28.) Roche also alleges that Shaya made $8 million in personal profits. (*Id.* ¶ 90.) Roche claims it suffered damages because each sale of test strips to Northwood and then Olympus/Delta "replaced a sale of retail strips that would have been made but for Defendants' fraud" and because Roche "paid millions of dollars of warranted rebates to insurance companies and [pharmacy benefit managers] in connection with these [insurance] claims" (*Id.* ¶¶ 124-25.)

On July 28, 2021, this Court entered an Opinion and Order denying Defendant Shaya's motion for summary judgment (ECF No. 96), and the Court also denied Defendant Shaya's motion for reconsideration of that Opinion and Order. (ECF No. 99.) The Court concluded that Plaintiff Roche Diabetes Care, Inc., as the successor-in-interest to Roche Diagnostics Corporation, is a proper plaintiff in this case, and

---

[1] Count III, a claim for negligent misrepresentation, was asserted against the now-dismissed Binson's Defendants only. (ECF No. 1, Compl., PageID.44-45.)

that genuine issues of material fact remain as to Roche's claims for fraud (including fraud, aiding and abetting fraud, and conspiracy to commit fraud), unjust enrichment, and tortious interference with contract. (ECF No. 96.)

On March 1, 2022, this Court entered an Order bifurcating the liability and damages phases of the trial, with the issue of liability on Roche's claims tried first, potentially followed by a second phase to determine damages, if necessary. (ECF No. 119.) On April 1, 2022, this Court entered an Order directing the parties to submit a revised proposed Joint Final Pretrial Order, and to identify in that order which exhibits will be used in the liability phase of the trial and which exhibits will be used in the damages phase. (ECF No. 120.)

In accordance with the Court's orders, the parties have now submitted their [Third Revised] Joint Proposed Final Pretrial Order and designated whether their proposed exhibits would be used in the liability phase or damages phase of the trial (or in some cases, in both phases). (ECF Nos. 183, 183-1.)

On January 17, 2023, Defendant Shaya filed 13 motions in limine seeking to exclude 13 of Roche's proposed trial exhibits. (ECF Nos. 132-144.) The motions were fully briefed.[2]

_____

[2] The Court previously issued an Opinion and Order granting Plaintiff Roche's unopposed motion in limine to exclude Defendant Shaya's proposed exhibit 503.

On June 27, 2023, the Court entered an Opinion and Order Denying Without Prejudice Defendant Christopher Shaya's Motions in Limine at ECF Nos. 140, 141, 143, and 144, addressing the four motions in limine that were seeking to exclude certain exhibits to be used during the liability phase of the trial. (ECF No. 177, Opinion and Order.)

The Court will now address Defendant Shaya's nine motions in limine relating to certain exhibits to be used during the damages phase of the trial only. (ECF Nos. 132-139, 142.)

## II.  LEGAL STANDARD

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings

_____

(ECF No. 125, Opinion and Order.) The Court will also separately address Plaintiff Roche's Motion in Limine to Preclude Evidence or Argument Regarding Manufacturing Costs or Profit Margins. (ECF No. 101.)

of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions in limine may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would

be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992), *overruled on other grounds by Weisgram v. Marley co.*, 528 U.S. 440 (2000)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

## III. ANALYSIS

Defendant Shaya has filed nine motions in limine seeking to exclude certain of Roche's proposed exhibits that will be used in the damages phase of the trial only–

9

proposed Exhibit Nos. 119, 121, 122, 161, 221, 230, 236, 237, and 238. As to each proposed Exhibit, Shaya generally argues that an Exhibit should be excluded for four reasons: (1) it is hearsay; (2) there is no witness to authenticate the exhibit; (3) it is irrelevant; and (4) it is more prejudicial than probative.

### A.   Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 119 (ECF No. 132)

Roche's proposed Exhibit No. 119 is "2014 and 2015 Form 1099s produced by Medical Supply Solutions, Inc. ("MSSI"), showing commission payments made to C. Shaya." (3d Revised JFPTO at p. 23.) Roche asserts that it will use this proposed exhibit during the damages phase of the bifurcated trial only. (*Id.*)

#### 1.  Hearsay and authentication

Shaya first argues that Exhibit No. 119 should be excluded because it is a hearsay document pursuant to Fed. R. Evid. 801(c), and it does not fall within one of the hearsay exceptions, in particular the business records exception under Rule 803(6).

Federal Rule of Evidence 801 defines "hearsay" as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Under Federal Rule of Evidence 803(6), records of a regularly

10

conducted business or organizational activity are not excluded as hearsay if the following conditions are met: (i) the record was created at or near the time by - or from information transmitted by – someone with knowledge; (ii) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (iii) making the record was a regular practice of that activity. These conditions must be shown by the testimony of "the custodian or another qualified witness, or by certification that complies with Rule 902(11) or (12) or with a statute permitting certification...." Fed. R. Evid. 803(6)(D). Records meeting these requirements are generally admissible if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Shaya contends that Roche has not listed a "custodian" or "qualified witness" "with knowledge" from MSSI who will testify that Exhibit No. 119 was "kept in the course of a regularly conducted business activity." Shaya further argues that Roche's expert's reliance on this Exhibit does not render the 1099 forms admissible under Fed. R. Evid. 703, citing *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) (Rules 702 and 703 do not … permit the admission of material relied

on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible.").

The burden of showing admissibility of evidence is on its proponent, here Roche. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liability Litig.*, 512 F. Supp. 3d 803, 812 (S.D. Ohio 2021) (citing *United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005)). Roche asserts that Exhibit No. 119 contains 2014 and 2015 Form 1099s produced by MSSI showing commission payments MSSI made to Shaya and that it demonstrates that Shaya received an indirect benefit from Roche from sales of NFR test strips. Roche argues in its Response brief that the 1099 Forms in Exhibit No. 119 "may be admissible" under the hearsay exceptions for business records, Rule 803(6), and public records, Rule 803(8). Roche asserts that it does not need to list a witness from MSSI to qualify the Form 1099s as business records, but instead can rely on an "otherwise qualified witness." That "otherwise qualified witness" does not need to have personal knowledge or involvement in the preparation of the records, need not be an employee of the record-keeping company, and "[a]ll that is required of the witness is that he or she is familiar with the record keeping procedures of the organization." *See United States v. Jenkins*, 345 F.3d 928, 935-36 (6th Cir. 2003). Roche asserts that the Form 1099s report non-employee compensation that Shaya received from MSSI, and that

Shaya "is qualified to authenticate his own tax forms, Form 1099s, that he regularly received in the normal course of his business." (ECF No. 147, Pls.' Resp., PageID.4173-74.)

The Court will defer ruling on this issue at this time and see if Roche can lay a basis for admission of Exhibit No. 119 under the business records exception to the hearsay rule during the damages phase of the trial, if necessary. *See Wright v. Best Recovery Servs. LLC*, No. 14-cv-12476, 2015 WL 6468135, at *1 (E.D. Mich. Oct. 27, 2015) (stating that "[a] district court should grant a motion to exclude evidence *in limine* 'only when [that] evidence is clearly inadmissible on all potential grounds'" and "where that high standard is not met, 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.'") (quoting *Indiana Ins. Co.*, 326 F. Supp. 2d at 846); *Hinkle v. Ford Motor Co.*, No. 3:11-24-DCR, 2012 WL 5868899, at *4 (E.D. Ky. Nov. 20, 2102) ("Issues of authentication and foundation are issues which are better examined during trial as evidence is presented in context of the parties' arguments and testimony.").

For example, in *United States v. Gambone*, 167 F. Supp. 2d 803, 830 (E.D. Pa. 2001), the court concluded that Form 1099s were properly admitted as non-hearsay evidence fitting the business record exception, Rule 803(6), because they

13

were admitted following the testimony of the person who actually prepared the forms and they were kept in relation to the regularly conducted business activity of the company. In *United States v. Hendrickson*, No. 13-cr-20371, 2014 WL 3563441, at *1 (E.D. Mich. July 18, 2014), the court denied the defendant's motion in limine to bar W-2 and 1099 forms, finding, without discussion, that the 1099 forms proffered by the government met the business records exception and public records exception to the hearsay rule.

Roche cites to *Caudill v. Cavalry SPV I, LLC*, No. 14-32-ART, 2014 WL 4230811 (E.D. Ky. Aug. 25, 2014), in support of its argument, but that case is distinguishable. In *Caudill*, the defendant debt collector was deemed qualified to introduce the plaintiff's credit card agreement with the bank under the business records exception to the hearsay rule even though he never claimed to have personal "knowledge of the procedures under which the [agreement was] created." *Id.* at *4. The court found, however, that the debt collector's personal knowledge was not required because "[d]ebt collectors routinely rely upon documents that they have 'integrated into [their] records' even when they do 'not have personal knowledge' of or 'personally participate in [their] creation, or even know who actually recorded the information.'" *Id.* The debt collector stated that upon the sale of the debtor's account to the collector, the related business records of the bank became, and were

14

fully integrated with, the business records of the collector, and that "[o]nce an entity integrates a third party's document into its records and relies upon it, the document becomes 'qualified for admission under the business records exception.'" *Id.* (citing *United States v. Hollie*, 93-6021, 25 F.3d 1051 (6th Cir. May 16, 1994) (unpublished)).

It is not clear at this time whether, like the defendant in *Caudill*, Shaya "integrated" the Form 1099s produced by MSSI with his business records. Shaya asserts in his Reply brief that he "simply does not know whether these documents created by some unknown person (not him) 7-8 years ago are accurate" and that he "has no knowledge of MSS[I]'s record-keeping practices," and thus cannot authenticate Exhibit No. 119. (ECF No. 164, Def.'s Reply, PageID.4751.) However, Roche should be permitted to ask Shaya if he received the 1099 Forms and if they were made part of his records.

### 2.  Federal Rule of Evidence 703

Roche also argues in its Response brief that Exhibit No. 119 is admissible under Federal Rule of Evidence 703, which allows a party to disclose to the jury "facts or data" relied upon by their expert that "would otherwise be inadmissible … if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." (ECF No. 147, Pls.' Resp., PageID.4175 (quoting

Fed. R. Evid. 703). Roche states that its expert, Dr. Gregory Bell, relied on Exhibit No. 119 to form his expert opinion on damages, and that the Exhibit would be "highly probative for the jury to evaluate Dr. Bell's methodology for calculating his damages." (*Id.* PageID.4175-76.)

Shaya, however, correctly asserts that the fact that an expert's opinion is based in whole or in part upon inadmissible evidence does not mean that the inadmissible evidence becomes admissible as substantive evidence for the truth of the matter asserted. As the Sixth Circuit Court of Appeals has explained:

> Rule 702 permits the admission of expert opinion *testimony* not opinions contained in documents prepared out of court. *See* Fed. R. Evid. 702. Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion. Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible. *See Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1261-62 (9th Cir. 1984). Rather, "Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion." *Id.*

*Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-29 (6th Cir. 1994). In other words, "the inadmissible evidence relied on by the expert is not somehow transmogrified into admissible evidence simply because an expert relies on it." *In re Lake States Commodities, Inc.*, 271 B.R. 575, 585 (N.D. Ill. 2002) (citing *Matter of James Wilson Assoc.*, 965 F.2d 160, 173 (7th Cir. 1992) ("The fact that inadmissible

16

evidence is the (permissible) premise of the expert's opinions does not make that evidence admissible for other purposes, purposes independent of the opinion.") Rather, the hearsay is admitted solely to explain the basis of the expert's opinion, not as proof of the underlying matter. *See Engebretsen,* 21 F.3d at 728-29; *Paddack*, 745 F.2d at 1261-62.

When inadmissible materials are admitted for explanatory purposes, the opposing party is entitled to a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

Therefore, to the extent Roche seeks to introduce Exhibit No. 119 into evidence during the damages phase of the trial, solely to explain the basis for Dr. Bell's opinion testimony, it will be admissible with a limiting instruction that the Exhibit may be considered "solely as a basis for the expert opinion and not as substantive evidence." *See Engebretson*, 21 F.3d at 728-29.

### 3.  Relevance and prejudice

Shaya also argues that Exhibit No. 119 should be excluded because it is irrelevant and, even if relevant, more prejudicial than probative. Shaya's principal argument is that Exhibit No. 119 is not relevant "because monies paid to Mr. Shaya by these entities do not constitute a benefit received from Plaintiffs, a necessary

17

element of an unjust enrichment claim." (ECF No. 132, Def.'s Mot., PageID.3625.) However, this Court has already held that an indirect benefit can support a claim for unjust enrichment under Michigan law (ECF No. 36, Opinion and Order, PageID.568-69; ECF No. 53, Opinion and Order on Reconsideration, PageID.944-46), and Shaya cannot relitigate that claim, yet again, in this motion in limine.

Roche asserts that Exhibit No. 119 is relevant to its claim for damages and would be presented to help the jury evaluate Dr. Bell's methodology and how he calculated his proposed damages award. The Court agrees that Exhibit No. 119 is relevant to Roche's damages claims and to Dr. Bell's opinion testimony.

Shaya also argues that Exhibit No. 119 is unduly prejudicial because "it will likely confuse the jury because Plaintiffs are not seeking to recover any monies paid by MSSI to Shaya" and it "may lead a jury to render a verdict against Mr. Shaya because Mr. Shaya received compensation from another company, MSSI[.]" (ECF No. 132, Def.'s Mot., PageID.3626.)

Roche argues in its Response that this "concern is moot" because Roche will only seek to admit Exhibit No. 119 during the damages phase of the bifurcated trial, after the jury has decided liability and, as stated above, this Court has already held that an indirect benefit can support a claim for unjust enrichment. Shaya therefore has failed to establish that Exhibit No. 119 is unduly prejudicial.

18

Therefore, based on all of the above, the Court DENIES WITHOUT PREJUDICE Defendant's motion in limine to exclude Exhibit No. 119 at this time (ECF No. 132). The Court notes that denial of a motion to exclude evidence in limine does not necessarily mean that the Court will admit the evidence at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984). "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound discretion, to alter a previous in limine ruling" *Id.* at 41-42; *see also Indiana Ins. Co.*, 326 F. Supp. 2d at 846 ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.") (citation omitted).

## B. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 121 (ECF No. 133)

Roche's proposed Exhibit No. 121 is a "[s]preadsheet summarizing test strip sales by Olympus Global, LLC and Alpha XE, LLC to MSSI, based on invoices produced by MSSI." (3d Revised JFPTO at p. 23.) Roche asserts that its expert, Dr. Bell, relied on this material to form his expert opinion, which involved an analysis of the number of NFR test strips sold by Roche and the prices at which they were

19

sold. Roche states that it will use this proposed Exhibit during the damages phase of the bifurcated trial only. (*Id.*)

Shaya first argues that Exhibit No. 121 should be excluded because it is a hearsay document under Fed. R. Evid. 801(c) and it does not fall within the business records exception to the hearsay rule under Rule 803(6).

Roche does not dispute these arguments in its Response.

Roche instead argues that Exhibit No. 121 is admissible pursuant to Fed. R. Evid. 703 because it will help the jury evaluate Dr. Bell's expert opinion, and it is not more prejudicial than probative. As stated above, the fact that an expert's opinion is based in whole or in part upon inadmissible evidence does not mean that the inadmissible evidence becomes admissible as substantive evidence for the truth of the matter asserted. *See Engebretsen*, 21 F.3d at 728-29 ("Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible. 'Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion.'") (internal and end citations omitted); *In re Lake States Commodities, Inc.*, 271 B.R. at 585 ("[T]he inadmissible evidence relied on by the expert is not somehow transmogrified into admissible evidence simply because an expert relies on it.")

20

(citation omitted). Rather, the hearsay is admitted solely to explain the basis of the expert's opinion, not as proof of the underlying matter. *See Engebretsen,* 21 F.3d at 728-29; *Paddack*, 745 F.2d at 1261-62.

The Court finds that Exhibit No. 121 is relevant to Roche's claim for damages to the extent it will assist the jury in evaluating Dr. Bell's opinion testimony. The Court further notes that because Roche will only seek to admit Exhibit No. 121 into evidence during the damages phase of the bifurcated trial, after the jury has decided liability, Shaya's concerns that the Exhibit may lead a jury to render a verdict against Shaya are moot.

Therefore, Shaya's motion to exclude Exhibit No. 121 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 121 will not be admitted for the truth of the matters asserted therein but may be admitted pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

### C. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 122 (ECF No. 134)

Roche's proposed Exhibit No. 122 is a "[s]preadsheet summarizing test strips sales by Olympus Global LLC and Alpha XE, LLC to Republic Pharmaceuticals,

Inc., based on invoices produced by Republic." (3D Revised JFPTO at p. 23.) As with Exhibit No. 121, Roche asserts that its expert, Dr. Bell, relied on this material to form his expert opinion, which involved an analysis of the number of NFR test strips sold by Roche and the prices at which they were sold. Roche asserts that it will use this proposed exhibit during the damages phase of the bifurcated trial only and is "not attempting to use [this Exhibit] for purposes other than to explain the bases of Dr. Bell's expert opinion."

The parties make the same argument regarding Exhibit No. 122 as they do with respect to Exhibit No. 121 (also a spreadsheet summarizing invoices) above.

For the reasons stated above, Shaya's motion to exclude Exhibit No. 122 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 122 will not be admitted for the truth of the matters asserted therein but may be admitted pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

### D. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 161 (ECF No. 135)

Roche's proposed Exhibit No. 161 is "[e]xamples of purchase and sales records from SP Distributors, Sterling Distributors, and Strategic Products Group,

Inc." (2nd Revised JFPTO at p. 26.) Roche asserts that it will use this proposed exhibit during the damages phase of the bifurcated trial only. (*Id.*)

Shaya argues that Exhibit No. 161 should be excluded from evidence because it is hearsay, Roche has failed to identify a witness who can authenticate the documents, it is irrelevant, and it is unduly prejudicial.

In Response, Roche argues only that Exhibit No. 161, which "contains examples of purchase and sales records of blood glucose test strips from SP Distributors, Sterling Distributors, and Strategic Products Group, Inc. produced in response to subpoenas," is admissible pursuant to Fed. R. Evid. 703. (ECF No. 150, Pls.' Resp., PageID.4221-22.) Roche asserts that it "would only seek to introduce Plaintiffs' Exhibit No. 161 during the damages phase of this bifurcated trial," and it "would be presented to help the jury evaluate Dr. Bell's methodology and how he calculated his proposed damages award," "which involved an analysis of the number of not-for-retail test strips sold by [Shaya] and the prices at which they were sold and then resold by distributors." (*Id.* PageID.4222-23.)

For the reasons stated above, Shaya's motion to exclude Exhibit No. 161 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 161 will not be admitted for the truth of the matters asserted therein but may be admitted pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence

23

may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

### E. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 230 (ECF No. 136)

Roche's proposed Exhibit No. 230 is a "[c]ompilation of Medical Supply Solutions, Inc. invoices for sales of Roche test strips from 2014 to 2016." (3d Revised JFPTO at p. 30.) Specifically, proposed Exhibit No. 230 consists of 195 pages of invoices from MSSI to various entities.

Shaya argues again in this motion in limine that Exhibit No. 230 should be excluded from evidence because it is hearsay, Roche has failed to identify a witness who can authenticate the documents, it is irrelevant, and it is unduly prejudicial.

In Response, Roche argues only that Exhibit No. 230 is admissible pursuant to Fed. R. Evid. 703. (ECF No. 150, Pls.' Resp., PageID.4221-22.) Roche asserts that its expert, Dr. Bell, relied on this material to form his expert opinion on Roche's damages, which involved an analysis of the number of NFR test strips sold by Shaya and the prices at which they were sold and then resold by distributors, and that it will use this proposed Exhibit during the damages phase of the bifurcated trial only for the jury to evaluate Dr. Bell's methodology for calculating damages. (*Id.*)

In his Reply brief, Shaya argues that "there is simply no evidence that exhibit 230 – a compilation of invoices from a non-party – is reliable" because "[w]hile companies affiliated with Shaya may have sold diabetic test strips, there is no evidence that the transactions reflected in exhibit 230 are the reselling of the strips sold by Shay[a]'s companies to MSS[I]." (ECF No. 170, Def.'s Reply, PageID.4783.)

For the reasons stated above, if Roche at trial can establish that the invoices in Exhibit No. 230 related to sales of Shaya's test strips between 2014 to 2016, Shaya's motion to exclude Exhibit No. 230 will be DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 230 will not be admitted for the truth of the matters asserted therein but may be admitted pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

### F. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 236 (ECF No. 137)

Roche's proposed Exhibit No. 236 is described in the proposed pretrial order as a "MSSI Sales Chart 2014-2016." (3d Revised JFPTO at p. 30.) Roche states that this Exhibit contains a compilation of MSSI sales of Roche blood glucose test strips

between 2014 and 2016 produced in response to subpoenas. Roche asserts that it will use this proposed Exhibit during the damages phase of the bifurcated trial only. (*Id.*)

Shaya argues again in this motion in limine that Exhibit No. 236 should be excluded from evidence for the same four reasons – (1) hearsay, (2) failure to authenticate, (3) irrelevance, and (4) undue prejudice.

And again, in its Response, Roche does not contend that Exhibit No. 236 is a business record or otherwise meets an exception to the hearsay rule. Roche instead argues only that this Exhibit is admissible pursuant to Fed. R. Evid. 703 because it will help the jury evaluate Dr. Bell's expert opinion, and it is not more prejudicial than probative. Roche asserts that Dr. Bell relied on this material to form his expert opinion on damages, and thus this evidence is highly probative for the jury to evaluate Dr. Bell's methodology for calculating damages and assess the facts and data that undergird Dr. Bell's assumptions for his analysis.

For the reasons stated above, Shaya's motion to exclude Exhibit No. 236 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 236 will not be admitted for the truth of the matters asserted therein but may be admitted pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

26

### G. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 237 (ECF No. 138)

Roche's proposed Exhibit No. 237 is "SP Distributors Subpoena Response." (3d Revised JFPTO at p. 30.) Roche explains that this Exhibit contains 26 pages of documents showing SP Distributors' purchases and sales of blood glucose test strips between June 2014 and November 2015, produced in response to a subpoena. (ECF No. 153, Pls.' Resp., PageID.4464.) Roche asserts that it will use this proposed Exhibit during the damages phase of the bifurcated trial only. (*Id.*)

Shaya argues again in this motion in limine that Exhibit No. 237 should be excluded from evidence for the same four reasons – (1) hearsay and not subject to the business records exception, (2) failure to authenticate, (3) it is irrelevant because there is no evidence that the transactions reflected in the Exhibit involve the test strips sold by Roche to Northwood and then by Northwood to Olympus/Delta, and (4) it is unduly prejudicial and would confuse the jury.

Roche does not contend in its Response brief that Exhibit No. 237 is a business record, or that it otherwise meets an exception to the hearsay rule. Roche instead only argues that this Exhibit is admissible during the damages phase of this bifurcated trial pursuant to Fed. R. Evid. 703 because it will help the jury evaluate Dr. Bell's expert opinion, and it is not more prejudicial than probative. Roche

27

contends that Dr. Bell relied on this material to form his expert opinion on damages, and thus this evidence is highly probative for the jury to evaluate Dr. Bell's methodology for calculating damages and assess that facts and data that undergird Dr. Bell's assumptions for his analysis.

For the reasons stated above, Shaya's motion to exclude Exhibit No. 237 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 237 will not be admitted for the truth of the matters asserted therein but may be admitted during the damages phase of this trial pursuant to Fed. R. Evid. 703 with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

### H. Shaya's Motion in Limine to Exclude Roche's Proposed Exhibit No. 238 (ECF No. 139)

Roche's proposed Exhibit No. 238 is "Sterling Distributors Purchase Journal for 2014-2017." (3d Revised JFPTO at p. 31.) Roche explains that this Exhibit contains six pages of documents showing Sterling Distributors' purchases of blood glucose test strips between 2014 and 2017, produced in response to a subpoena. (ECF No. 154, Pls.' Resp., PageID.4502.) Roche asserts that it will use this proposed Exhibit during the damages phase of the bifurcated trial only. (*Id.*)

28

Shaya argues again in this motion in limine that Exhibit No. 238 should be excluded from evidence for the same four reasons – (1) hearsay and not subject to the business records exception, (2) failure to authenticate, (3) it is irrelevant because there is no evidence that the transactions reflected in the exhibit involve the strips sold by Roche to Northwood and then by Northwood to Olympus/Delta, and (4) it is unduly prejudicial and would confuse the jury.

Roche does not contend in its Response brief that Exhibit No. 238 is a business record, or that it otherwise meets an exception to the hearsay rule. Roche instead only argues this Exhibit is admissible during the damages phase of this bifurcated trial pursuant to Fed. R. Evid. 703 because it will help the jury evaluate Dr. Bell's expert opinion, and it is not more prejudicial than probative. Roche contends that Dr. Bell relied on this material to form his expert opinion on damages, and thus this evidence is highly probative for the jury to evaluate Dr. Bell's methodology for calculating damages and assess that facts and data that undergird Dr. Bell's assumptions for his analysis.

For the reasons stated above, Shaya's motion to exclude Exhibit No. 238 is DENIED WITHOUT PREJUDICE, with the understanding that Exhibit No. 238 will not be admitted for the truth of the matters asserted therein, but that Roche can seek to admit this exhibit during the damages phase of this trial pursuant to Fed. R. Evid.

703, with a limiting instruction to the jury that the evidence may be considered "solely as a basis for the expert opinion and not as substantive evidence." *Engebretson*, 21 F.3d at 728-29 (citing *Paddack*, 745 F.2d at 1262).

Shaya may of course fully explore and test Dr. Bell's opinions on cross-examination and question Dr. Bell regarding the facts and data upon which his opinions are based.

### I. Shaya's Motion in Limine to Exclude Roche's proposed Exhibit No. 221 (ECF No. 142)

Roche's proposed Exhibit No. 221 is comprised of "[s]creenshots of transactions, including transfers and withdrawals, from Alpha XE LLC['s] Bank of America account in Feb. and March 2015." (3d Revised JFPTO at p. 29.) Roche states that it will use this proposed Exhibit during the damages phase of the bifurcated trial only.

Shaya argues again in this motion in limine that Roche's proposed Exhibit No. 221 should be excluded from evidence for the same four reasons as above – (1) hearsay and not subject to the business records exception, (2) failure to authenticate, (3) it is irrelevant, and (4) it is unduly prejudicial and would confuse the jury.

## 1.  Hearsay and Authentication

Shaya argues that proposed Exhibit No. 221 – eight pages of excerpts of bank statements reflecting deposits and withdrawals into and out of the Bank of America checking account of Alpha XE, LLC (which is not a party to this case) – is clearly hearsay, and not subject to the business records exception. Shaya asserts that Roche has failed to list a "custodian" or "qualified witness" who will testify that these bank records were "kept in the course of a regularly conducted business activity," as required by Fed. R. Evid. 803(6).

Roche argues in its Response brief that Alpha XE LLC is one of Shaya's companies involved in the sales of NFR blood glucose test strips, and that this evidence demonstrates that Shaya received an indirect benefit from Roche from sales of the NFR test strips. Roche states that Shaya confirmed in his deposition in this case that Exhibit No. 221 was a Bank of America statement from the account he opened for Alpha XE LLC, and that this Exhibit shows wires and check deposits from both MSSI and Republic to Alpha XE LLE, as well as withdrawals or other debits out of the account to Northwood:

> Q:     … I'm marking Exhibit 48 for identification, a Bank of America bank statement from 20 – January 1st, 2015, through January 31st, 2015. … [I]s this the account you opened for Alpha XE
>
> A:     Yes.

Q:   And these show wires in from MSSI and they show countercredits. Countercredits are when you deposit checks; correct?

A:   Correct.

Q:   And those checks are all from MSSI or are they from other people as well?

A:   They were from other people as well.

Q:   And that – would that be from the one other customer you had in Michigan?

A:   Yes, Republic.

                                        ***

Q:   And then if we look at the last page, so I understand this, it shows wires out, and those are all to Northwood, and presumably for your payment for the test strips?

A:   Yes. You mean withdrawals and other debits?

Q:   Yes.

(ECF No. 157-2, Shaya Dep. at pp. 222-23, PageID.4647.)

This deposition testimony is some evidence that Shaya is familiar with the Bank of America account records in Exhibit No. 221, and the recording of the wires, check deposits, withdrawals, and debits recorded on the statement. "It is well established that federal law favors the admission of evidence which has *any*

probative value at all" and that this principal "has been applied by courts in dealing with Rule 803(6)" in civil and criminal cases. *United States v. Hathaway*, 798 F.2d 902, 906-07 (6th Cir. 1986) (citing *Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) ("Rule 803(6) 'favor(s) the admission of evidence rather than its exclusion if it has any probative value at all.'") (quoting *United States v. Carranco*, 551 F.2d 1197, 1200 (10th Cir. 1977) and *United States v. Holladay*, 566 F.2d 1018, 1020 (5th Cir. 1978)); *see also United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (explaining that "[t]he purpose of [Rule 803(6)] is to ensure that documents were not created for 'personal purpose[s] … or in anticipation of any litigation' so that the creator of the document 'had no motive to falsify the record in question.'") (citation omitted). "Because of the general trustworthiness of regularly kept records and the need for such evidence in many cases, the business records exception has been construed generously in favor of admissibility." *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1996) (citations omitted). "District courts, moreover, are accorded broad discretion in determining whether a proper foundation has been laid for admitting business records." *Id.* (citations omitted). In addition, as stated above, questions of authentication of an Exhibit should be deferred at this time as "such issues are better examined during trial as evidence presented in the context of the parties' arguments and testimony." *See Hinkle*, 2012 WL 5868899, at *4

("Issues of authentication and foundation are issues which are better examined during trial as evidence is presented in the context of the parties' arguments and testimony."); *see also Hilborn v. Chaw Khong Tech., Co.*, No. 03-cv-71726, 2008 WL 4225783 at *2 (E.D. Mich. Sept. 10, 2008) (finding motions in limine with respect to proposed trial exhibits based on authentication premature).

If Roche fails to lay the proper groundwork for the admission of the Exhibit at trial, Shaya may renew his authentication objection at that time.

## 2.  Relevance and Undue Prejudice

Roche asserts that Exhibit No. 221 is relevant because it relates to its claim for damages owed by Shaya based on his unjust enrichment from receipt of an indirect benefit from Roche from sales of NFR test strips.

Shaya argues that Exhibit No. 221 is irrelevant because "on its face, it reflects activity by Alpha XE, LLC, which is not a party to this case," and that "monies paid by other parties to Alpha XE, LLC do not constitute a benefit received directly by Shaya from Plaintiffs, a necessary element of an unjust enrichment claim." (ECF No. 142, Def.'s Mot., PageID.4107.)

However, this Court has already held that an indirect benefit can support a claim for unjust enrichment under Michigan law (ECF No. 36, Opinion and Order,

PageID.568-69; ECF No. 53, Opinion and Order on Reconsideration, PageID.944-46), and Shaya cannot relitigate that claim in his motion in limine.

Roche contends that Exhibit No. 221 is not more prejudicial than probative because it only seeks to introduce the Exhibit during the damages phase of the bifurcated trial, after the jury has decided liability, and thus the Exhibit cannot "confuse the jury, leading to a verdict based solely on monies paid to non-party Alpha XE LLC." As stated above, this Court has stated in this case that an indirect benefit can support a claim for unjust enrichment under Michigan law.

For all of these reasons, the Court DENIES WITHOUT PREJUDICE Shaya's motion in limine to exclude proposed Exhibit No. 221. *See Indiana Ins. Co.*, 326 F. Supp. 2d at 846.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES WITHOUT PREJUDICE Defendant Shaya's motions in limine to exclude Roche's proposed Exhibit Nos. 119, 121, 122, 161, 221, 230, 236, 237, and 238 (ECF Nos. 132-39, 142).

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 9, 2023

35