MEMORANDUM
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHE DIAGNOSTICS CORP. and
ROCHE DIABETES CARE, INC.,

        Plaintiffs,

v.

CHRISTOPHER F. SHAYA,

        Defendant,
_____/

Case No. 19-10264

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING PLAINITFFS' MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING MANUFACTURING COSTS OR PROFIT MARGINS (ECF NO. 101)

This case involves an alleged scheme by Defendant Christopher Shaya to use his companies, Olympus Global, LLC (Olympus) and Delta Global, LLC (Delta), to purchase not-for-retail-sale (NFR) diabetes test strips manufactured by Plaintiffs Roche Diagnostics Corp. and Roche Diabetes Care, Inc. (together, Roche) from Northwood, Inc. (Northwood) and resell them in retail markets at a significant markup. (*See generally*, ECF No. 1, Complaint.)

Now before the Court is Plaintiffs Roche Diagnostic Corporation and Roche Diabetes Care's Motion in Limine to Preclude Evidence or Argument Regarding

1

Manufacturing Costs or Profit Margins. (ECF No. 101.) The motion has been fully briefed, and the Court held a hearing on Plaintiffs' motion on February 28, 2022, at which counsel for Plaintiffs and Defendant appeared.

For the reasons that follow, the Court GRANTS Plaintiffs' Motion in Limine to Preclude Evidence or Argument Regarding Manufacturing Costs or Profit Margins.

## I. BACKGROUND

The background facts of this litigation are set forth in detail in this Court's July 28, 2021, Opinion and Order denying Defendant Shaya's motion for summary judgment (ECF No. 96) and will be reiterated here only as necessary to provide context for the Court's ruling on Plaintiffs' motion in limine.

Plaintiffs Roche Diagnostic Corporation and Roche Diabetes Care, Inc. (together, Roche) manufacture and distribute blood glucose test strips through two different channels: (1) retail test strips are distributed to retail pharmacies and dispensed primarily to patients whose insurance plans cover test strips under a "pharmacy benefit," the same benefit that covers prescription drugs; and (2) not for retail sale, or NFR, test strips are sold by mail order to patients whose insurance plans cover test strips under a "durable medical equipment" (DME) benefit. (ECF No. 90-2, Declaration of Kimberly Ober, PageID.2623-2624).

2

The only difference between retail and NFR test strips is the packaging; the test strips themselves are identical. Retail test strips sell for a much higher price than NFR test strips due to large rebates that manufacturers, such as Roche, pay to insurers that reimburse retail pharmacies through pharmacy-benefit insurance. (*Id.* PageID.2624- 2625). For the time period relevant in this case (2014–2015), Roche sold retail test strips at list prices of about $65–71 per 50-strip box, and the identical NFR test strips at prices of about $13 per box. Roche paid rebates to insurers of about $43 per box for retail test strips, leaving Roche with net revenues of about $24-26 per box of retail test strips. (*Id.*) Roche paid no rebates on NFR test strips.

Roche alleges that Defendant Christopher Shaya, through several shell companies, engaged in a scheme to fraudulently divert 1.5 million boxes of Roche's NFR blood glucose test strips to retail pharmacies. Roche now asserts claims against Shaya for fraud, unjust enrichment, and tortious interference with contract. (ECF No. 1, Complaint.)[1] Plaintiffs allege that Defendant Shaya made approximately $8 million "from his fraudulent diversion scheme," and that Plaintiffs have lost more than $80 million in profits. (*Id.*)

---

[1] Roche also brought these claims against three other defendants and also asserted a separate negligent misrepresentation claim against those defendants only. Those three defendants have since been dismissed by settling.

3

On July 28, 2021, the Court entered an Opinion and Order denying Defendant Shaya's motion for summary judgment (ECF No. 96), and the Court also denied Defendant Shaya's motion for reconsideration of that Opinion and Order. (ECF No. 99.) The Court concluded that Plaintiff Roche Diabetes Care, Inc., as the successor-in-interest to Roche Diagnostics Corporation, is a proper plaintiff in this case, and that genuine issues of material fact remain as to Plaintiffs' claims against Shaya for fraud (including fraud, aiding and abetting fraud, and conspiracy to commit fraud), unjust enrichment, and tortious interference with contract. (ECF No. 96.)

On March 1, 2022, this Court entered an Order bifurcating the liability and damages phases of the trial, with the issue of liability on Roche's claims tried first, potentially followed by a second phase to determine damages, if necessary. (ECF No. 119.) The Court also deferred ruling on the instant motion in limine until the jury's resolution of the liability phase of the trial. (*Id.*) However, for considerations of trial convenience and administrative and judicial efficiency, the Court will now address the instant motion.

## II. LEGAL STANDARD

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine*

4

rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions *in limine* may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

5

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it] believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514-15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

6

## III. ANALYSIS

### A. The Parties' Arguments

#### 1. Roche's motion in limine

Roche contends that Shaya, operating through shell companies, conspired with an authorized Roche distributor to deceive Roche into selling him low-priced NFR blood-glucose test strips, which he then re-sold at a large profit to gray-market pharmaceutical companies, who in turn sold them to pharmacies where they were dispensed at much higher retail prices. (ECF No. 101, Pls.' Mot., PageID.3400.) Roche further contends that through this scheme, Shaya personally made at least $7 million and Roche lost more than $80 million in profits that it otherwise would have made from retail sales. (*Id.*)

Roche anticipates, based on prior filings, that Shaya will argue that, rather than suffering losses from Shaya's alleged fraudulent diversion, Roche in fact profited from it, because Roche's low-priced NFR test strips are sold at a price that is higher than their manufacturing costs. (*Id.*, citing ECF No. 76, Defendant's Motion for Summary Judgment, PageID.1450.)

Roche argues that its manufacturing costs, and its gross profit margins, on NFR test strips are completely irrelevant to Roche's claimed losses from Shaya's diversion of Roche-made NFR test strips into retail channels. Rather, Roche claims

7

that Shaya illegally profited from the price differences between Roche's NFR test strips and Roche's retail test strips – both of which are manufactured by Roche – and thus the diversion of one Roche product for another Roche product had no impact on Roche's manufacturing costs. Roche's damages expert opined that Roche's loss can be measured by the price difference between the NFR test strips that were diverted and the retail test strips whose sales they replaced. (ECF No. 90-30, Gregory Bell Expert Report, PageID.3042.) Thus, he asserts, manufacturing costs are irrelevant to the damages calculation because NFR test strips and retail test strips cost the same amount to manufacture, and the costs therefore cancel each other out. (*Id.* PageID.3049.)

Roche therefore seeks to exclude evidence or argument regarding its manufacturing costs and profits, because such evidence is irrelevant to Roche's claimed damages and would be confusing and prejudicial to the jury. (Pls.' Mot.)

2.   **Shaya's Response**

Shaya argues in response to Roche's motion in limine that Roche's damages claim is based on two unsupported assumptions – (1) that all of the 1.5 million test strips Roche sold to Northwood and then to Shaya's entities could have been sold in the retail channel at a higher price; and (2) also that Roche paid rebates on all of the 1.5 million diverted strips, resulting in a loss of over $80 million to Roche. (Def.'s

8

Resp., PageID.3476.) Shaya contends that he will "present a damage model through [his] own expert" that Roche suffered no loss as a result of the 1.5 million diverted test strips, and instead made a net profit (the sale price per box minus the manufacturing cost). (*Id.* PageID.3481.) Shaya argues that Roche's manufacturing cost evidence is necessary to establish that Roche made a net profit on the transactions at issue, and that evidence will not complicate the proceedings and does not require a parade of witnesses. (*Id.* PageID.3482.)

### 3. Roche's reply

Roche argues in reply that Shaya merely repackages earlier arguments he made in his motion to strike Roche's damages expert, Dr. Gregory Bell, which this Court has already considered and rejected. Roche contends, however, that Shaya has failed to respond to Roche's argument that, because Roche's manufacturing costs for retail test strips and NFR test strips are identical, those costs are irrelevant to damages or to any other issue in the case and would serve no purpose but to confuse the jury. (Pl.'s Reply, PageID.3513.) Roche argues that if Shaya presents evidence at trial to show that Roche suffered no losses from the diverted test strips (that those sales were not made in place of retail sales and no rebates were made), then Roche's damages would simply be zero. Manufacturing costs would not need to be considered and therefore are not relevant.

9

### B. Whether Roche's Manufacturing Costs and Net Profits are Relevant

Roche alleges that if it knew "that its heavily-discounted NFR test strips would be diverted for retail sale, it would not have sold them to Northwood," and "[t]he retail beneficiaries who ultimately purchased the diverted NFR test strips would have instead purchased retail strips" secured through proper channels, and "[e]ach sale of diverted NFR test strips therefore replaced a sale of retail strips that would have been made but for Defendants' fraud." (ECF No. 1, Compl. ¶ 124.) Roche thus is claiming that it suffered damages from Shaya's diversion of its diabetes test strips "in the amount of the difference between the price for which it sold the diverted NFR test strips to Northwood ($10.67 per box) and the price it would have received for the retail test strips the patients would otherwise have purchased (about $65 per box in 2014 and about $71 per box in 2015)." (*Id.* ¶ 126.) In addition, Roche paid rebates to insurers of about $43 per box for retail test strips. As Roche's damages expert explains, manufacturing costs are irrelevant to calculating Roche's loss because NFR test strips and retail test strips costs are the same to manufacture, and thus the costs cancel each other out. (ECF No. 90-30, Bell Expert Report, PageID.3049, 3053) (ECF 90-2, Ober Decl., PageID.2623 ("The

only difference between retail and DME test strips is the packaging. The test strips themselves are identical.").)

The Court finds that Shaya fails to sufficiently explain how Roche's manufacturing costs are relevant to Roche's claim for damages in this case based on Shaya's alleged diversion of NFR test strips to retail sales. First, the Court has already decided, and rejected, Shaya's arguments attacking the assumptions made by Roche's damages expert, and it need not address those same arguments again here. (See ECF No. 97, Opinion and Order Denying Defendant's Motion to Strike Plaintiffs' Damages Expert.) The Court found that the expert's assumptions find sufficient support in the record, and that Shaya is free to challenge Roche's damages analysis at trial. Shaya never disclosed a damages expert and his challenges to Roche's expert's assumptions fails to demonstrate how Roche's manufacturing costs are relevant to calculating Roche's damages.

Shaya's argument that manufacturing costs are relevant to show that Roche made a profit (calculated as revenue minus manufacturing costs) on the sale of NFR test strips to Northwood fails. Roche has never argued that it does not make a profit on its sale of NFR test strips. But an analysis of the manufacturing costs of the test strips is irrelevant to Roche's damages claim – which, again, is the difference in wholesale price between a retail test strip and diverted NFR test strips, multiplied by

11

the number of diverted test strips. Because the claimed harm is caused by replacing one Roche manufactured product with another Roche manufactured product, and the manufacturing costs for retail test strips and NFR test strips are the same, they cancel each other out, and do not factor into that damages calculation. Contrary to Shaya's argument that Roche is improperly seeking lost gross profits, as Roche explains in its reply brief, by subtracting the price of NFR test strips from the price of retail test strips, Roche accounts for the manufacturing costs, which are already included in those prices, and which are the same for both types of test strips, and thus those costs cancel each other out.

Accordingly, the Court concludes that evidence or argument concerning Roche's manufacturing costs or gross profit margins should be precluded under Fed. R. Evid. 401 because that evidence does not have "any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence."

### C. Danger of Unfair Prejudice or Confusion

Roche further argues that, even if the Court found evidence concerning Roche's manufacturing costs or gross profit margin had some relevance, Shaya should nevertheless be precluded from introducing such evidence or argument because those numbers would confuse and distract the jury from accurately assessing

12

Roche's losses. (Pls.' Mot., PageID.3405-07.) Roche asserts that this evidence would be highly prejudicial because Shaya's alleged fraudulent diversion scheme is complex and may be confusing to jurors unfamiliar with the structure of the medical supplies industry, and Roche's manufacturing costs and profit margins for NFR test strips are irrelevant to calculating Roche's damages. Roche contends that such evidence thus would simply confuse and distract the jury from properly assessing the evidence. (*Id.*)

Shaya argues in response only that the "simple calculations" regarding Roche's net profits for NFR test strips (sale price minus manufacturing cost) would not confuse the jury. (Def.'s Resp., PageID.3481-82.)

Roche argues in reply that because the manufacturing costs are not relevant to any conceivable damages model, it could only be used to improperly bias the jury by suggesting that Roche, a corporation, made some amount of money and thus should not be permitted to recover damages sufficient to compensate it for its loss from Shaya's fraudulent activity. (Pls.' Reply, PageID.3518.)

The Court finds that because Shaya has failed to articulate a legitimate basis for presenting evidence or argument regarding Roche's manufacturing costs or gross profit margins, such evidence should be excluded. *See Bunch v. Pacific Cycle, Inc.*, No. 4:13-CV-0036, 2015 WL 11622952, at *10 (N.D. Ga. Apr. 27, 2015) (excluding

13

"evidence or argument concerning the profit margin of the Bicycle at trial," finding that "excluding evidence pertaining to the profit margin on the Bicycle, as opposed to its sales price or the cost of a proposed alternative design, will not prevent Plaintiffs from presenting their case and will not severely hamper them in their efforts."). Because evidence of Roche's manufacturing costs or profit margin is not relevant to Roche's claim for damages in this case, such evidence could likely confuse and distract the jury from the issues at trial, including Roche's alleged damages. Further, admission of such evidence or argument could be unfairly prejudicial to Roche by suggesting to the jury that Roche already was compensated and should not be permitted to recover damages caused by Shaya's alleged fraudulent activity. Shaya can challenge Roche's expert's damages analysis at trial, but Roche's manufacturing costs or profit margins are not relevant to that analysis.

14

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' Motion in Limine (ECF No. 101) and precludes evidence or argument at trial regarding Roche's manufacturing costs or its gross profit margins.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: November 9, 2023